So Ordered.

Dated: September 25, 2024



Rachel M. Blise
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In re: | |
|---|---|
| Thomas Orthodontics, S.C.<br>Jess T. Thomas and Brooke A. Thomas, | Case No. 23-25432-rmb<br>Case No. 23-25433-rmb |
| Jointly Administered Debtors. | Chapter 11<br>(Jointly Administered<br>Under Case No. 23-25432-rmb) |

**DECISION AND ORDER (1) DENYING DEBTORS' MOTION TO DEEM TIMELY WELLS FARGO BANK'S LATE-FILED BALLOT, AND
(2) DENYING DEBTORS' MOTION TO DEEM CREDITOR
WELLS FARGO BANK TO HAVE ACCEPTED THE PLAN**

The Court set a deadline of April 5, 2024 for creditors to return ballots accepting or rejecting the debtors' chapter 11 plan. Secured creditor Wells Fargo Bank, N.A., the only creditor in Class 2D, did not return a ballot by the deadline. The debtors requested that the Court deem Wells Fargo to have accepted the plan by its silence. The debtors also filed a motion to deem Wells Fargo's ballot, returned on July 9, 2024, to be timely. The Court issued an oral ruling denying the debtors' requests on both issues during a hearing held on August 15, 2024. This decision and order memorializes and supplements the Court's oral ruling.

## BACKGROUND

The debtors in these jointly-administered cases are Thomas Orthodontics, S.C., Case No. 23-25432, and Dr. Jess Thomas and Brooke Thomas, Case No. 23-25433. The debtors filed chapter 11 petitions on November 27, 2023 and elected to proceed under subchapter V of chapter 11. They filed a joint chapter 11 plan on February 26, 2024. ECF No. 113. On February 27, 2024, the Court entered an order setting various deadlines related to the chapter 11 plan. ECF No. 109. As relevant here, the court set a deadline of April 5, 2024 for creditors to return a ballot accepting or rejecting the plan. The debtors filed a modified plan on March 4, 2024, which was served on all creditors, along with a ballot to accept or reject the plan. The debtors filed a further modified plan on April 4, 2024, but the modifications did not require re-balloting.

The plan divided creditors into several classes. Classes 1A through 1C include three creditors holding secured claims against Thomas Orthodontics; Classes 2A through 2D include four creditors holding secured claims against the Thomases individually; Class 3A includes all general unsecured claims against Thomas Orthodontics; and Class 3B includes all general unsecured claims against the Thomases individually.

The creditors in classes 1A through 1C all voted to accept the plan. The claim of the creditor in Class 2A is unimpaired, so that creditor was deemed to have accepted the plan. The creditors in Classes 2B and 2C voted to accept the plan. The only creditor in Class 2D, Wells Fargo Bank, N.A., did not vote.

Eleven of the creditors in Class 3A returned a ballot by the deadline. Eight of the creditors (73%) voted to accept the plan; three (37%) voted to reject the plan. The claims of the voting creditors in Class 3A total $1,681,058.24. The eight creditors voting in favor of the plan hold claims in the amount of $1,113,733.09, or 66.3% of the total. One additional creditor in Class 3A, Dentsply North America, LLC, voted to accept the plan, but its ballot was returned on

2

April 11, 2024. The debtors' Report on Balloting states, "Since it was untimely the ballot of Dentsply North America was not counted by the Debtors." ECF No. 129 at 3.

Nine of the creditors in Class 3B returned a ballot by the deadline. Six of the creditors (66.6%) voted to accept the plan; three (33.3%) voted to reject the plan. The claims of the voting creditors in Class 3B total $1,888,449.02. The six creditors voting in favor of the plan hold claims in the amount of $1,310,787.47, or 69.4% of the total.[1]

Based on the returned ballots, two impaired classes had not voted to accept the plan: Class 2D, the claim of Wells Fargo, which did not return a ballot; and Class 3A, which did not reach the threshold required under 11 U.S.C. § 1126(c). Because not all classes of creditors had voted to accept the plan, the plan could be confirmed, if at all, only under 11 U.S.C. § 1191(b).

The Court held an evidentiary hearing on plan confirmation on July 3, 2024. The Court ordered post-hearing briefing on several issues, including on the debtors' argument that Class 2D should be deemed to have accepted the plan, even though Wells Fargo, the only creditor in the class, did not return a ballot. The upshot of that argument, according to the debtors, is that the plan can be confirmed as to the Thomases under 11 U.S.C. § 1191(a), rather than § 1191(b), because all classes of the Thomases' creditors would have accepted the plan. Unsecured creditor, Kapitus Servicing, Inc., which also objected to confirmation, opposed the debtors' request that Wells Fargo be deemed to have accepted the plan by its non-response.

---

[1] These figures are taken from the debtors' Report on Balloting. ECF No. 129. Exhibit 1 to the report indicates that the U.S. Small Business Administration (SBA) holds two claims against both Thomas Orthodontics and the Thomases individually in the amounts of $530,873.29 and $539,143.23. The SBA filed two claims in those amounts in the Thomas Orthodontics case, but the SBA did not file any claims in the Thomases' individual case. The amounts of the SBA's claims against the Thomases are therefore set by the debtors' schedule of liabilities. *See* Fed. R. Bankr. P. 3003. The Thomases' schedules indicate that the SBA holds two claims, both in the amount of $500,000. ECF No. 95 at 30. Therefore, the debtors should have used $500,000 for each of the SBA claims in calculating the amount of the claims of the creditors who voted in favor of the plan. Using those figures, the total of the claims of the creditors who voted is $1,818,432.50, and the six creditors voting in favor of the plan hold claims in the amount of $1,240,770.95, or 68.2% of the total.

Following the hearing, the debtors contacted Wells Fargo and requested that the creditor return a ballot.  Wells Fargo eventually agreed, and on July 9, 2024, Wells Fargo sent the debtors' counsel a ballot accepting the plan.  On July 24, 2024, the debtors filed a motion to deem Wells Fargo's ballot to be timely.  ECF No. 194.  On August 8, 2024, Kapitus objected to the motion.  ECF No. 204.  On August 9, 2024, a representative of Wells Fargo stated in an email to the debtors' counsel that Wells Fargo's "business practice is to object to confirmation when it believes that a plan doesn't adequately protect its interests, but ordinarily does not otherwise submit ballots as a matter of course."  ECF No. 208-1 at 3.

## DISCUSSION

The significance of Wells Fargo's acceptance (or not) of the Thomases' plan lies in 11 U.S.C. § 1191.  Under § 1191(a), the Court is required to confirm the plan if all requirements of § 1129(a) are met, other than paragraph (15) of that section.  11 U.S.C. § 1191(a).  One such requirement is § 1129(a)(8), which requires that each class of impaired claims must accept the plan.  Thus, if all impaired classes of the Thomases' creditors accept the plan then, according to the debtors, the plan can be confirmed under § 1191(a) as to the Thomases.[2]

If any one impaired class of claims does not accept the plan, then the plan can be confirmed only under § 1191(b).  That subsection requires the Court to find, among other requirements, that the plan is "fair and equitable" with respect to each impaired class, meaning that the plan must provide that all of the projected disposable income of the debtor to be received

---

[2] There is no dispute the plan can be confirmed as to Thomas Orthodontics only under § 1191(b) because Class 3A, the general unsecured creditors of Thomas Orthodontics, did not accept the plan.  The Court requested post-hearing briefing from the parties on the issue whether the debtors' joint plan could be confirmed as to the Thomases under § 1191(a) but as to Thomas Orthodontics under § 1191(b).  Because the Court holds that Class 2D has not accepted the plan, this issue is moot, and the Court does not decide it.

4

in the three years (or up to five years) after confirmation is applied to make payments under the plan.  11 U.S.C. § 1191(b), (c)(2)(A).

If Wells Fargo's untimely ballot, or its non-vote, is counted, then all impaired classes have accepted the plan as to the Thomases.  If Wells Fargo's untimely ballot or non-vote is not counted as an acceptance, then all impaired classes have not accepted the plan.

### Wells Fargo's Untimely Ballot

Federal Rule of Bankruptcy Procedure 3017(c) provides that the court "shall fix a time within which the holders of claims and interests may accept or reject the plan."  Fed. R. Civ. P. 3017(c).  Here, the Court set a deadline of April 5, 2024 for creditors to return their ballots accepting or rejecting the plan.  It is undisputed that Wells Fargo did not return its ballot by the deadline.  The debtors nevertheless urge the Court to allow Wells Fargo's untimely ballot to be counted as an acceptance of the plan.

Federal Rule of Bankruptcy Procedure 9006(b)(1) allows the court to extend deadlines imposed by court order under certain circumstances.  If an extension is sought before the deadline expires, then the deadline can be extended for "cause shown."  Fed. R. Bankr. P. 9006(b)(1).  After the deadline expires, an extension should be granted only where the movant shows that "the failure to act was the result of excusable neglect."  *Id.*  The question is whether the standard in Rule 9006(b)(1) for extension of deadlines applies to untimely ballots in chapter 11 cases.

The cases addressing untimely ballots are nearly unanimous in holding that the "excusable neglect" standard in Rule 9006(b)(1) should be applied when a request to extend the deadline to submit a ballot is made after expiration of the original deadline.  *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1313-15 (8th Cir. 1987) (affirming bankruptcy court's disallowance of a late ballot under "excusable neglect" standard); *In re Sabbun*, 556 B.R.

383, 389 (Bankr. C.D. Ill. 2016) ("A deadline for Chapter 11 plan balloting may be extended after the deadline has expired if a motion is made setting forth why the initial 'failure to act was the result of excusable neglect.'") (quoting Fed. R. Bankr. P. 9006(b)(1)); *In re Ekstrom*, No. 08-07750, 2010 WL 1254983, *14 (Bankr. D. Ariz. March 23, 2010) ("Once the date for filing an acceptance or rejection of the plan has been fixed, a creditor must accept or reject the plan within this time limit, or move the court to permit late filing where failure to file timely was the result of excusable neglect."); *In re Rhead*, 179 B.R. 169, 177 (Bankr. D. Ariz. 1995) (finding "excusable neglect" sufficient to justify an extension of the voting deadline); *In re Richard Buick, Inc.*, 126 B.R. 840, 847 (Bankr. E.D. Pa. 1991) ("Since GMAC's ballot . . . [was] filed *after* the applicable deadline, GMAC must prove its failure to timely file its ballot . . . was the result of 'excusable neglect' by GMAC's counsel."); *In re Paul*, 101 B.R. 228, 230 (Bankr. S.D. Cal. 1989) (holding that Rule 9006(b)(1) applies to enlarge the time within which a creditor's ballot can be filed).

The only court that did not apply the excusable neglect standard in addressing whether to count an untimely ballot was *In re Global Ocean Carriers Ltd.*, 251 B.R. 31 (Bankr. D. Del. 2000). The facts of that case are distinguishable for the reasons discussed in more detail below. Moreover, in determining that the late ballot in that case would be counted, the court stated that some courts have said excusable neglect is required while others "have been liberal in allowing late ballots." *Id.* at 40. For the latter proposition, the court cited *In re Rhead*, which clearly applied excusable neglect in determining whether to allow a late ballot. *See Rhead*, 179 B.R. at 177. The Court concludes that *Global Ocean Carriers* is therefore not persuasive to the extent the court held that a standard other than "excusable neglect" is required when a party in interest seeks to extend a court-ordered deadline for returning ballots and the request is made after expiration of the original deadline.

6

The Supreme Court has held that excusable neglect is an equitable standard, and a court should weigh all relevant circumstances surrounding the party's omission. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 385 (1993). In weighing the circumstances, a court should consider the following factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay, including whether the delay was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* The Court concludes that consideration of these factors weighs against a finding of excusable neglect, and that Wells Fargo's untimely ballot therefore should not be counted.

The *Pioneer* decision discusses the danger of prejudice to the *debtor* (who was the nonmoving party in that case), but the Seventh Circuit has repeatedly emphasized that courts should focus on the effect of an extension on the *nonmoving party*. *See, e.g.*, *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1153 (7th Cir. 2021); *United States v. Cates*, 716 F.3d 445, 448 (7th Cir. 2013). In this case, the debtors are the moving party, so the Court must focus on the effect on nonmoving parties.

Here, the Court held a full evidentiary hearing on plan confirmation, with all participating parties assuming that the Thomases' plan likely could be confirmed only under 11 U.S.C. § 1191(b) because Wells Fargo had not returned a ballot. Objecting creditor Kapitus and counsel for the U.S. Trustee spent time and effort preparing for and attending the hearing, and they made strategic decisions regarding the evidence that would be presented at the hearing based on that assumption. In addition, the Court has not yet ruled on whether the plan can be confirmed under § 1191(b), and it may be that Kapitus is entitled to a greater distribution if the Thomases are not committing all their disposable income to the plan as required under § 1191(b) and (c). It is not

7

clear at this point whether the non-moving parties were in fact prejudiced, but the debtors ultimately bear the burden of proving that the nonmoving parties were *not* prejudiced. *See In re Kmart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004) (movant bears the burden of proving lack of prejudice). The debtors presented no evidence or proffer of evidence on this issue. It seems unfair for the debtors to obtain a strategical advantage by taking action to change the facts after a full evidentiary hearing, particularly without explaining how their late submission did not prejudice the other parties.

The lengthy delay in submission of Wells Fargo's ballot had a significant impact on these proceedings. Again, the Court held a contested confirmation hearing attended by several parties, counsel, and witnesses. Wells Fargo's ballot was not returned until five days after the evidentiary hearing concluded, and 95 days after the initial deadline. The debtors did not file their two-page motion to deem the ballot timely for another 15 days. The Court declines to incentivize such behavior by allowing the debtors to do the work of obtaining the necessary ballots only after the Court and the other parties in interest expended the time and effort of an evidentiary hearing. Moreover, allowing parties in interest to solicit (or return) ballots from non-participating creditors after an evidentiary hearing on plan confirmation could only invite mischief. For example, if the Court allowed debtors to solicit late acceptances, could creditors or other parties in interest solicit late rejections? Likely not, and the debtors have not explained why there should be a difference between allowing late acceptances and late rejections.

The reason for the delay in returning Wells Fargo's ballot is not attributable to the debtors as the movants, but the reason for the 95-day delay is nevertheless relevant.[3] The record

---

[3] It is also relevant that the debtors waited another 15 days to file their motion after their counsel received Wells Fargo's ballot. The debtors offered no explanation for that delay.

indicates that Wells Fargo made a conscious decision not to vote either for or against the plan and did so only after prompting by the debtors' counsel. Under these circumstances, the Court would not grant a motion by Wells Fargo to have its late ballot counted because the missed deadline did not result from carelessness or the like. *See Pioneer*, 507 U.S. at 388 (neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness"); *see also Kmart Corp.*, 381 F.3d at 715 (the reason for the delay is "immensely persuasive" and other circuits have held it to be "the preeminent factor" in the analysis). That the motion was filed by the debtors instead should not change the result. If the debtors wanted Wells Fargo to return a ballot, the time for soliciting the ballot was before the deadline, or at the very least well in advance of the evidentiary hearing on plan confirmation.

Finally, the good faith of the debtors is a neutral factor at best. The Thomases want to have their plan confirmed as a consensual plan, and they have a right to consensual confirmation if they can satisfy the requirements. But the time for satisfying those requirements was before the confirmation hearing, not after.

None of the cases cited by the Thomases in which courts have allowed untimely ballots is persuasive here because the circumstances of those cases are meaningfully different from this case. In *In re Ekstrom*, the court set a deadline of May 5 for creditors to return ballots accepting or rejecting the debtor's plan. 2010 WL 1254893, at *15. One creditor did not return its ballot accepting the plan until August 24. *Id.* The court allowed the late ballot because ongoing negotiations with other creditors had resulted in a plan amendment after the ballot deadline and postponement of the scheduled contested confirmation hearing. *Id.* at *16. In addition, the creditor had not realized it was able to vote on the plan until it retained counsel in preparation for a deposition related to the contested confirmation issues. *Id.* In this case, in contrast, Wells

9

Fargo's ballot was not returned until after the contested confirmation hearing, and Wells Fargo was well aware of its ability to vote on the plan.

In *In re Paul*, the ballots were due on October 6. 101 B.R. at 229. Two creditors returned late ballots, one on October 11 and one on October 12. *Id.* The court found excusable neglect and allowed the late ballots because both creditors had timely filed objections to confirmation by the deadline of October 11, and the debtor's ballot summary was not due until October 14. *Id.* at 231. The court concluded that the late ballots "caused neither delay nor prejudice to the debtor." *Id.* Here, Wells Fargo did not respond to the plan at all, and its ballot was returned well after the debtor's ballot summary was filed and after the contested confirmation hearing. In contrast to the circumstances in *Paul*, the delay was appreciable and had an effect on judicial proceedings.

In *In re Rhead*, the ballot deadline was July 5, but the Maricopa County Treasurer did not return its ballot accepting the plan until July 7. 179 B.R. at 176. The court found excusable neglect to allow the late ballot because the debtor and the county had engaged in extensive negotiations over the county's treatment in the plan, which were briefly stalled by the July 4 holiday. *Id.* The negotiated resolution resulted in a modified plan filed on July 8 that created a new class of secured claims that included the county's claim. *Id.* Here, in contrast, the treatment of Wells Fargo's claim has not changed since the debtors' initial plan was filed, giving Wells Fargo ample time to consider the plan and return a ballot.

In *In re Global Ocean Carriers*, the court set a ballot deadline of April 28. 251 B.R. at 36. The only impaired class voted to reject the plan, and on May 16 the debtor filed a modified plan that created a second impaired class. *Id.* at 36, 39. The only creditor in the new impaired class returned a ballot accepting the plan dated May 3. *Id.* at 39. The court allowed the late

10

ballot, acting *sua sponte* because neither the debtor nor the accepting creditor filed a motion. *Id.* at 40. The court reasoned that the creditor was not entitled to vote on the plan until its claim was impaired by the modified plan. *Id.* Here, in contrast, Wells Fargo has always been entitled to vote on the plan.

The debtors also note that if confirmation is denied and a modified plan is sent to creditors with new ballots then Wells Fargo likely will vote for the plan and the debtors will again seek confirmation under § 1191(a) but with added administrative costs. That may be a practical reason to allow a late ballot in a different case, but in this case there are pending objections that the Thomases' plan does not meet other requirements of § 1129(a), including the requirement that the plan be proposed in good faith. Therefore, the lack of creditor consent is not the only thing preventing confirmation under § 1191(a). Based on the circumstances of this case as a whole, the Court concludes that extension of the deadline for Wells Fargo to submit a ballot is not warranted.

**Wells Fargo's Non-Vote**

Alternatively, the debtors request that the Court deem Wells Fargo to have accepted the plan by its silence and failure to vote. The non-vote of a class of creditors has similar consequences in "ordinary" chapter 11 cases as it does in subchapter V cases. If all impaired classes accept the plan, then the plan can be confirmed under § 1129(a). If all impaired classes do not accept the plan, then the plan can be confirmed only under § 1129(b). Thus, the issue whether a single creditor or class of creditors can accept a plan by silence has an impact in all chapter 11 cases.

Section 1126(a) of the Bankruptcy Code provides that the holder of a claim "may accept or reject a plan." 11 U.S.C. § 1126(a). Federal Rule of Bankruptcy Procedure 3018 provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or

rejected, be signed by the creditor . . . or an authorized agent, and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).

Notwithstanding that Rule 3018(c) plainly requires an acceptance to be in writing, the debtors contend that Wells Fargo's silence can be construed as an acceptance.  They rely primarily on *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988).  In that case, a set of creditors did not vote and later raised an objection to provisions in the plan.  The bankruptcy court construed the creditors' failure to vote as an acceptance of the plan, which the district court and Tenth Circuit affirmed.  *Id.* at 1267-68.

Despite being roundly criticized since its issuance, the *Ruti-Sweetwater* decision recently found purchase in two cases in the Southern District of Texas.  *In re Franco's Paving LLC*, 654 B.R. 107 (Bankr. S.D. Tex. 2023); *In re Hot'z Power Wash, Inc.*, 655 B.R. 107 (Bankr. S.D. Tex. 2023).  In *Franco's Paving*, the court held that "a creditor that agrees to a debtor's plan may express its consent by affirmatively voting for a plan or by simply choosing not to file an objection."  654 B.R. at 110.  According to the court, "the overarching policy of Subchapter V is satisfied" by deeming a non-voting creditor to have accepted a plan because subchapter V favors consensual confirmation.  *Id.*  Similarly, in *Hot'z Power Wash*, the court concluded that "Congress clearly articulated a preference for consensual plans confirmed under § 1191(a)," and allowing a creditor's silence to force a non-consensual plan "defeats the overarching policy preferences of Subchapter V."  655 B.R. at 118-19.  The *Hot'z Power Wash* court determined that a non-voting class should not be counted at all in determining whether all impaired classes have accepted the plan.  *Id.* at 118.

In contrast, a clear majority of courts have held that an impaired class cannot accept a chapter 11 plan by silence.  *In re M.V.J. Auto World, Inc.*, 661 B.R. 186, 190 (Bankr. S.D. Fla.

2024) ("It is not absurd that no creditors in a class voting on a plan should be treated any differently than a situation where there is not a sufficient number of creditors voting in favor of a plan to satisfy section 1129(a)(8)."); *In re Lupton Consulting LLC*, 633 B.R. 844, 862, n.20 (Bankr. E.D. Wis. 2021) ("a failure to cast a ballot is not consent"); *In re Sabbun*, 556 B.R. 383, 391 (Bankr. C.D. Ill. 2016) (stipulation with IRS was not an appropriate ballot under Rule 3018, so the IRS had not accepted the plan); *In re Vita Corp.*, 358 B.R. 749, 751 (Bankr. C.D. Ill. 2007) ("A creditor's failure to return a ballot rejecting the plan does not constitute the creditor's deemed acceptance of the plan."); *In re Friese*, 103 B.R. 90, 91-92 (Bankr. S.D.N.Y. 1989) ("[T]he court cannot deem an impaired class to have accepted a plan if no creditors in that class have voted.").

The Court concludes that the majority view is more persuasive, particularly considering the express provisions of § 1126. The statute provides that an impaired class of claims has accepted the plan if the plan "has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c). That is, only the votes actually cast are counted to determine whether the class as a whole has accepted the plan. When at least one creditor in a class votes, silent creditors are not deemed to have accepted the plan when counting acceptances and rejections. Silent creditors should not be treated differently when no creditors in a class vote.

Section 1126 also includes presumptions that are relevant here. A class of creditors that is not impaired is presumed to have accepted the plan. 11 U.S.C. § 1126(f). And a class of creditors that will receive no distribution is presumed to have rejected the plan. 11 U.S.C.

§ 1126(g). If Congress intended that a non-voting creditor would be presumed to have accepted the plan, Congress knew how to write that presumption into the statute. Congress did not.

The debtors (and the courts in *Franco's Paving* and *Hot'z Power Wash*) are correct that Congress appears to have intended that subchapter V plans would be confirmed as consensual plans under § 1191(a) whenever possible. *See, e.g.*, 11 U.S.C. § 1183(b)(7) (one role of the subchapter V trustee is to "facilitate the development of a consensual plan of reorganization"). But the Court cannot use this policy to contravene the express requirements of the applicable statutes and rules. Section 1129(a)(8) applies in all chapter 11 cases, not just cases under subchapter V. Nothing in the Bankruptcy Code or rules suggests that the Court can adopt an interpretation of § 1129(a)(8), § 1126, and Rule 3018 that is unique to subchapter V. Perceptions of the purpose of subchapter V should not dictate the interpretation of a provision of general application.

A creditor's acceptance of a chapter 11 plan, whether under subchapter V or otherwise, must be in writing and conform to the requirements of Rule 3018. Wells Fargo did not accept the plan in writing before the ballot deadline. Therefore, all classes of impaired claims did not vote in favor of the plan, and the plan cannot be confirmed under § 1191(a).

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The debtors' motion to extend the deadline for Wells Fargo to return a ballot accepting the plan is DENIED; and

2. The debtors' motion to deem Class 2D consisting of the claim of Wells Fargo to have accepted the plan is DENIED.

# # # # #

14

Case 23-25432-rmb    Doc 229    Entered 09/25/24 16:10:43    Page 14 of 14